Argued and submitted October 18, reversed in part
and remanded December 29, 1982

KING,
*Appellant,*
*v.*
GREYHOUND LINES, INC.,
*Respondent.*

(No. A8008-04534, CA A24383)

656 P2d 349

Robert A. Sacks, Portland, argued the cause and filed the briefs for appellant.

Robert R. Hollis, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is an action to recover damages for a violation of the Public Accommodations Act, ORS 30.670 *et seq.*[1] The trial court, sitting without a jury, found that racial slurs made by defendant's employe during the course of employment did not constitute a violation of the act and entered judgment for defendant. Plaintiff appeals, and we reverse.[2]

We summarize the trial court's findings of fact. Defendant offers transportation services and public accommodations to the general public. On November 30, 1979, plaintiff, a black man, purchased a one-way bus ticket to

---

[1] The Public Accommodations Act provides:

"30.670 All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin.

"30.675 (1) A place of public accommodation, subject to the exclusion in subsection (2) of this section, means any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements or otherwise.

"(2) However, a place of public accommodation does not include any institution, bona fide club or place of accommodation which is in its nature distinctly private.

"30.680 Any persons against whom any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin has been made by any place of public accommodation, as defined in ORS 30.675, by any person acting on behalf of such place or by any person aiding or abetting such place or person in violation of ORS 30.685 shall have a cause of action to recover compensatory and punitive damages from the operator or manager of such place or the employe or person acting on behalf of such place or the aider or abettor of such place or person. In the action the operator or manager of such place, the employe or person acting on behalf of such place or the aider or abettor of such place or person shall be jointly and severally liable. Any person recovering damages under this section shall be entitled to reasonable attorney fees at trial and on appeal as determined by the court in addition to costs and necessary disbursements.

"30.685 It is unlawful for any person to aid or abet any place of public accommodation, as defined in ORS 30.675 or any person acting on behalf of such place to make any distinction, discrimination or restriction on account of race, religion, color, sex, marital status or national origin."

The provision in ORS 30.680 permitting an award of attorney fees on appeal was added by Or Laws 1981, ch 897, § 7, effective January 1, 1982.

[2] Initially, plaintiff filed a complaint with the Bureau of Labor and Industries pursuant to ORS 659.045(1). Before the agency had made any determination or disposition of the complaint, plaintiff filed this action and the agency then closed its file.

Long Beach, California, from defendant at its terminal in Portland. On December 13, 1979, plaintiff sought to return the ticket for a refund by tendering it to Cole, defendant's ticket agent at the Portland terminal.

Defendant has a standard refund procedure that requires the employe processing a refund to be satisfied that the person returning the ticket is the original purchaser. When a ticket agent suspects that the person seeking a refund is not the original purchaser, the ticket is routinely forwarded by mail to defendant's regional office, where it is held for 30 days. If no report of loss or theft of the ticket is made during that time, the refund is mailed. To facilitate this procedure, each ticket carries a mark identifying the clerk who sold it. Plaintiff's ticket bore Cole's mark, but Cole did not recognize plaintiff. When asked if he could identify the agent who sold him the ticket, plaintiff incorrectly identified another clerk. Cole declined to issue an immediate cash refund and informed plaintiff of defendant's refund policy. During this transaction, Cole made the following remarks to plaintiff:

"Nigger, where did you get this ticket?"

and

"Now, boy, you get the person who purchased the ticket, and I'll be glad to refund it."

The trial court also found that, while plaintiff had been degraded, humiliated and embarrassed by these racial slurs,[3] he was the victim of prejudice and not the victim of discrimination within the meaning of the statute.[4]

---

[3] The trial court also found that these "racial slurs were not authorized, approved or ratified by the defendant" and that "defendant is opposed to such conduct or any type of racial discrimination."

[4] The trial court placed some reliance on *Howard v. National Cash Register Co.,* 388 F Supp 603 (SD Ohio 1975), an action by an employe against his employer, alleging violations of the civil rights acts of 1964 and 1866, because of racial insults and harassment by the plaintiff's co-workers. The court distinguished acts of prejudice by individuals from discrimination by the employer. The court observed:

"The Archie Bunkers of this world, within limitations, still may assert their biased view. We have not yet reached the point where we have taken from individuals the right to be prejudiced, so long as such prejudice did not evidence itself in discrimination. This court will secure plaintiff against discrimination; no court can secure him against prejudice." 388 F Supp at 606.

The issue is whether racial insults[5] made by an employe of a place of public accommodation to a customer in the course of serving that customer constitute a "distinction, discrimination or restriction on account of race" in contravention of ORS 30.670. Plaintiff argues that although he was not refused service, the manner in which he was served was discriminatory in that he suffered abuse and inferior service on account of his race. Defendant argues that the act was not intended to make racial slurs actionable.

Although racial insults and verbal harassment made by members of the general public may not be a violation of the act, defendant's proposition overlooks the fact that the verbal abuse in question was made by an employe of a place of public accommodation in the course of serving plaintiff. ORS 30.670 entitles all persons to

"* * * the full and equal accommodations, advantages, facilities and privileges of *any* place of public accommodation without *any* distinction, discrimination or restriction on account of race * * *." (Emphasis supplied.)

To argue that plaintiff received "full and equal" accommodations even though he suffered racial slurs and animadversions in the course of the transaction is analogous to arguing that separate accommodations may be equal accommodations. Certainly, if plaintiff was relegated to a certain section of the bus or made to wait until white customers were served, it could not be seriously contended that he received full and equal accommodations. *See Gayle v. Browder,* 352 US 903, 77 S Ct 145, 1 L Ed 2d 114 (1956) citing *Brown v. Board of Education,* 347 US 483, 74 S Ct 686, 98 L Ed 873 (1954); *see also* cases listed in *Annot.,* 87 ALR2d 120, 140 (1963); 26 Op Att'y Gen 208 (Or 1954) (it is a violation of the act to serve black customers in one area of a restaurant and white customers in another area.)[6]

---

[5] While defendant believes that no racial slurs were made by its employe, it concedes that the trial court's findings were adequately supported by the testimony.

[6] Concerning the actionability of racial slurs under the Public Accommodations Act, both parties rely on employment discrimination cases in this context. Those cases have limited precedential value. The relationship between a place of public accommodation and a member of the general public is fundamentally different from an employer-employe relationship. For instance, an individual instance of

■    In short, the statutory prohibition against "distinction, discrimination or restriction" on the basis of race encompasses more than the outright denial of service. It also proscribes serving customers of one race in a manner different from those of another race. As one author noted, after surveying federal and state public accommodation laws:

> "The basic violation of the Public Accommodations law is a denial of full and equal services at a covered establishment. Such a denial occurs when there is discriminatory or abusive treatment, service or charges. At present, complaints of insulting or discriminatory treatment intended to discourage certain customers are as common as complaints of outright refusals of entry. Exclusion and unequal treatment which form the core of any public accommodation violation are covered by all statutes." *Discrimination in Access to Public Places: A survey of State and Federal Public Accommodations Law,* 7 NYU Rev of Law and Social Change, 215, 244 (1978).

There is little legislative history describing what is meant by the terms "distinction, discrimination or restriction." Similarly, the few cases construing the act are concerned with what constitutes "a place of public accommodation" and consequently offer little guidance on the issue presented. However, it is clear that the general intent

---

harassment may be insufficient to prove discrimination in an ongoing employment relationship, while a similarly isolated incident could amount to a violation of the Public Accommodations Act because of the singular nature of the contact between the customer and the business. *See Hughes v. Mark's Big Boy,* 479 F Supp 834 (ED Wis 1979). Defendant cites *Howard v. National Cash Register Company, supra,* n 4; *Lee v. City of Richmond,* 456 F Supp 756 (ED Va 1978); and *Friend v. Leidinger,* 446 F Supp 361 (ED Va 1977), *aff'd* 588 F2d 61 (4th Cir 1978) for the proposition that racial slurs do not amount to discrimination. In addition to the differences noted above, these cases may also be distinguished by the fact that the issue involved was not whether racial harassment is a form of discrimination but whether such harassment by a co-worker can be imputed to the employer. ORS 30.680 specifically imputes the discriminatory acts of an employe to the employer of a place of public accommodation. Similarly, the employment cases cited by plaintiff for the proposition that racial slurs do amount to discrimination, such as *Murry v. American Standard, Inc.* 373 F Supp 716 (ED La 1973), *aff'd* 488 F2d 529 (5th Cir 1973); *Fred Meyer v. Bureau of Labor* 39 Or App 253, 592 P2d 564, *rev den* (1979), involve more than verbal abuse and include incomplete and inconsistent directions, unequal treatment in promotions and terminations. Employment cases shed some light on the subtle and varied forms discriminatory treatment may take, but they offer little guidance to our interpretation of the Public Accommodations Act.

of the legislation when it was enacted in 1953 was to prevent "operators and owners of *businesses* catering to the general public from subjecting Negroes to oppression and humiliation * * *. " *Schwenk v. Boy Scouts of America,* 275 Or 327, 332, 551 P2d 465 (1976). To hold that verbal abuse can be a "distinction, discrimination or restriction" on the basis of race is consistent with this broad legislative purpose. Moreover, that interpretation recognizes that the chief harm resulting from the practice of discrimination by establishments serving the general public is not the monetary loss of a commercial transaction or the inconvenience of limited access but, rather, the greater evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity.[7] We hold that defendant violated the act.

■ ■ The trial court concluded its findings and conclusions as follows:

> "In the interest of judicial economy, and without prejudice to the above findings, it is further determined that if there had been an act of unlawful discrimination, plaintiff would be entitled to recover against [defendant] the sums of $500 in general damages and $1,000 as punitive damages. The amount plaintiff would be entitled to recover as reasonable attorney fees, if appropriate, for trial and appeal is left to the appellate court to be determined."

We reverse the judgment in favor of defendant and remand with instructions to enter judgment in favor of plaintiff in accordance with the trial court's determination of general and punitive damages. Plaintiff's reasonable attorney fees at trial shall be determined by the trial court. Because this action was commenced prior to January 1, 1982, plaintiff is not entitled to attorney fees on appeal. Or Laws 1981, ch 897, §§ 108, 109.

Reversed and remanded with instructions to enter judgment in favor of plaintiff and against defendant in the

---

[7] Defendant also argues that, because there is a common law remedy for verbal abuse by common carriers, we must find that the legislature intended to alter the common law in order to provide plaintiff relief under ORS 30.680. There is nothing in the legislative history to suggest such an intention and we therefore follow the general rule that the statutory remedy is cumulative of the common-law remedy. *See Brown v. Transcon Lines,* 284 Or 597, 610, 588 P2d 1087 (1978), and cases cited therein.

sum of $500 general damages and $1,000 punitive damages. The trial court shall determine plaintiff's reasonable attorney fees.