**Xavier ALLEN, Plaintiff,**

v.

**U.S. BANCORP, d.b.a. "U.S. Bank," Defendant.**

**No. CIV. 02–1148–AS.**

United States District Court, D. Oregon.

Jan. 22, 2003.

---

Martin C. Dolan, Sue–Del McCulloch, Dolan Griggs & McCulloch, L.L.P., Portland, for plaintiff.

Jeffrey J. Druckman, Janine C. Blatt, Druckman & Associates, P.C., Portland, for defendant.

## OPINION AND ORDER

HAGGERTY, Chief Judge.

In his Findings and Recommendation (doc. # 11), Magistrate Judge Ashmanskas recommended granting in part and denying in part defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted (doc. # 4). The case was referred to this court on December 2, 2002.

The matter is now before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been filed. Although "[f]ailure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact ... in this circuit, failure to object generally does *not* waive objections to

purely legal conclusions." *Jones v. Wood*, 207 F.3d 557, 562 n. 2 (9th Cir.2000) (citing *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998)) (emphasis added); *see also Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir.1991).

Defendant's motion to dismiss the complaint involves a purely legal question. The court reviews the Magistrate Judge's decision *de novo*. For the reasons stated below, the court adopts in part and declines to adopt in part the Magistrate Judge's Findings and Recommendation.

## BACKGROUND

Plaintiff is an African American man and is a longstanding customer of defendant U.S. Bank. He operates a catering business and holds both a business account and personal checking account with defendant.

On August 30, 2001, plaintiff entered a U.S. Bank branch in southeast Portland, Oregon. The bank designated separate lines for business-related transactions and personal transactions. Plaintiff waited in the business line because he was conducting business for his catering operation. Plaintiff was wearing sunglasses and a hat. According to the complaint, a teller stared at plaintiff suspiciously and summoned her supervisor, who also looked at plaintiff suspiciously. Citing "U.S. Bank policy," the supervisor asked plaintiff to remove his sunglasses. During this confrontation, plaintiff observed a white customer wearing sunglasses who was conducting business in the bank without being asked to remove his glasses.

When plaintiff reached the front of the line designated for business-related transactions, he was denied service and told to wait in the line designated for individual customers. On two occasions following the incident, plaintiff directed two of his white employees to enter the bank wearing the

same sunglasses and hat he had been asked to remove. The white employees made deposits at the same U.S. Bank branch without being asked to remove their sunglasses.

## STANDARDS

Defendant moves to dismiss the entire complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). When considering motions to dismiss, the court must determine whether it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See* Fed. R.Civ.P. 12(b)(6); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.1997); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir.1997). The reviewing court must treat all facts alleged in the complaint as true, and all doubts are resolved in favor of the non-moving party. *Gilligan*, 108 F.3d at 248; *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *Experimental Eng'g Inc. v. United Technologies Corp.*, 614 F.2d 1244, 1245 (9th Cir.1980).

## DISCUSSION

Plaintiff brings two claims alleging civil rights violations under 42 U.S.C. § 1981 and Or.Rev.Stat. § 659A.403. The court considers each alleged violation individually in order to determine whether plaintiff has properly pled a claim for relief.

### A. Violations under 42 U.S.C. § 1981

■ Section 1981 prohibits racial discrimination in the making and enforcement of contracts: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (1991). Section 1981 is violated if: (1) plaintiff is a member of a racial minority; (2) defendant intentionally discriminated against plaintiff because of his or her race; and (3) the discrimination involved the making or enforcing of a contract. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413–14 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993); *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir.1989).

The first two elements are properly pled. Plaintiff is an African American man who charges that defendant intentionally discriminated against him because of his race. The only remaining issue is whether the alleged discrimination involved the making or enforcing of a contract.

Prior to the Civil Rights Act of 1991, the Supreme Court limited the application of § 1981 to two specific areas of contract law: (1) contract formation and (2) the enforcement of contract rights through the legal process. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (declining to overrule *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). In response to the Supreme Court's narrow interpretation of § 1981, Congress enacted the Civil Rights Act of 1991, which, among other things, expanded the phrase "make and enforce contracts" to "embrace all phases and incidents of the contractual relationship ...." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

■ Ignoring Congress's intent to broaden the application of the civil rights statute, defendant argues that § 1981 is violated only when a person of color is denied "a fundamental contractual right." The application of the Civil Rights Act of 1991 is not limited to the *fundamental* aspects of a contract. Rather, parties are

prohibited from discriminating in *"all phases and incidents of the contractual relationship . . . ." Rivers,* 511 U.S. at 298, 114 S.Ct. 1510 (emphasis added).

The parties cite several cases from other districts involving the denial of various services in restaurants and stores. *See, e.g., Joseph v. New York Yankees P'shp,* 2000 WL 1559019, 2000 U.S. Dist Lexis 15417 (S.D.N.Y.2000) (plaintiff denied entry to restaurant); *Bobbitt v. Rage, Inc.,* 19 F.Supp.2d 512 (W.D.N.C.1998) (plaintiffs required to pre-pay for their food); *Washington v. Duty Free Shoppers, Ltd.,* 710 F.Supp. 1288 (N.D.Cal.1988) (African Americans required to show passport to enter store, while white customers allowed to enter without such restrictions). Defendant contends that these cases support the position that § 1981 only prohibits discriminatory conduct that impairs a fundamental characteristic of the contract. For example, the ability to eat a meal is a fundamental characteristic of the contract between restaurants and patrons. A shopper's ability to enter a store and complete a purchase is a fundamental characteristic of the contract between the shopkeeper and the customer, according to defendant.

 While the outright denial of services is certainly a sufficient basis for finding a § 1981 violation, it is not a necessary condition under the statutory scheme Congress outlined in the Civil Rights Act of 1991. A logical extension of defendant's reasoning would allow a restaurant to utilize segregated seating and not offend § 1981. African American patrons could still enjoy the "fundamental characteristic of the contractual relationship" because they would "get their meal," albeit in a segregated setting. Similarly, under defendant's scheme, a store patron told to wait in a longer line reserved for people of color would have no claim because he or she would eventually be able to purchase the item after enduring race-based delay and harassment.

The Civil Rights Act of 1991 makes clear that people of color are to enjoy the same "benefits, privileges, terms, and conditions of the contractual relationship" as other contracting parties. The complaint alleges that plaintiff was required to remove his sunglasses as a condition of conducting business at U.S. Bank. Presumably, if plaintiff had not complied with this requirement he would have been denied service altogether. By imposing additional restrictions in order to receive service, defendant offered plaintiff different "terms and conditions of the contractual relationship" because of his race.

 Section 1981 extends to race-based contract *modifications.* Prior to August 30, 2001, there was no "dress code" provision in the contract between the parties. Unlike cases involving restaurant customers and shoppers, plaintiff is a longstanding customer of defendant who engaged in a written contract with defendant to provide banking services. By allegedly requiring plaintiff to remove his sunglasses as a *new* condition of doing business at the bank, defendant modified the contractual relationship with plaintiff because of his race, further offending § 1981.

 A second instance of discrimination alleged in the complaint involves plaintiff's assertion that he was required to change lines because of his race. The Findings and Recommendation states that "there are no allegations in the complaint to suggest this request was racially motivated." Findings and Recommendation at 4 n. 1. In fact, there are specific allegations to that effect. The complaint alleges that both of defendant's actions-requiring plaintiff to remove his sunglasses and change lines-were "instance[s] of discriminatory treatment." Complaint ¶ 22. The Magistrate Judge was "unable to discern from the record whether . . . [plaintiff] was

asked to change lines because that teller window closed or whether other white customers with like accounts were allowed to conduct business after [plaintiff] was asked to move to another line." Findings and Recommendation at 4 n. 1. However, such determinations are reserved for the fact-finder and are beyond the scope of the court's inquiry on a motion to dismiss. Because the complaint goes beyond making "bare allegations" of wrongful intent, for purposes of evaluating defendant's motion to dismiss, the court accepts as true plaintiff's allegation that the request to change lines was based on discriminatory animus.

Defendant's contractual obligations to plaintiff are not satisfied merely because plaintiff was ultimately able to deposit his check. Plaintiff's contractual expectation included the right to receive service on the same time line as other customers. By requiring plaintiff to wait in a separate line because of his race, defendant explicitly denied plaintiff the benefit of timely service enjoyed by other customers.

In sum, the complaint sufficiently alleges that the contract terms offered to plaintiff differed markedly from those offered to other customers. Other customers were simply required to wait in line for the next available teller in order to receive service. In contrast, defendant allegedly imposed more conditions on plaintiff because of his race-plaintiff was required to remove his sunglasses and change lines. The complaint properly alleges that race played a central role in the modification and performance of the contractual relationship between plaintiff and defendant. Defendant's motion to dismiss plaintiff's first claim for relief is denied.

## B. Public accommodation discrimination under O.R.S. § 659A.403

The court concurs with the Findings and Recommendation that plaintiff has suffi-

ciently pled a claim for relief under Or. Rev.Stat. § 659A.403. Defendant's motion to dismiss plaintiff's second claim for relief is denied.

## C. Supplemental jurisdiction

■ The federal and state claims arise out a common nucleus of operative facts. The court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

### CONCLUSION

For the foregoing reasons, the court adopts in part and declines to adopt in part the Magistrate Judge's Findings and Recommendation (doc. # 11). Defendant's motion to dismiss the complaint (doc. # 4) is DENIED.

IT IS SO ORDERED.

### FINDINGS AND RECOMMENDATION

ASHMANSKAS, United States Magistrate Judge.

Defendant, U.S. Bancorp, filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Oral argument was heard and for the reasons set forth below, the motion should be GRANTED in part, and DENIED in part.

### BACKGROUND

Xavier Allen filed a complaint against U.S. Bancorp alleging violations of 42 U.S.C. § 1981 and Or.Rev.Stat. § 659A.403. Allen alleges that while he was waiting to make a deposit into his business account, Tanya Crawford, a U.S. Bancorp teller, stared at him suspiciously and began whispering to Lisa Nelson, her manager. According to the complaint, Nelson then too began to stare suspiciously at Allen and both Nelson and Crawford began to whisper to each other. Subsequently, Nelson requested that Allen re-

move his sunglasses pursuant to U.S. Bancorp policy prohibiting customers from wearing sunglasses inside the bank. Allen complied with the request and continued to wait in line.

While waiting, Allen observed a white customer enter the bank wearing sunglasses. The white customer was permitted to remain in the bank without removing his sunglasses nor was he stared at suspiciously or treated differently from the other customers while waiting in line.

Allen was then refused service at the business teller window and had to go to the back of the regular customer line to wait. Upon completing his deposit, Allen spoke with Judie Fraser, the assistant manager at U.S. Bancorp, who informed him that she was unaware of a "no sunglasses policy," but that Allen had been asked to remove his sunglasses as a security precaution.

Following the incident, on two separate occasions, two of Allen's white employees wore the sunglasses used by Allen and entered the bank to make deposits. Neither of Allen's two white employees were stared at suspiciously or requested to remove their sunglasses.

**STANDARD**

Defendant's motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Because the court rules before it receives any evidence, such motions are disfavored. 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1984). For purposes of the motion, the factual allegations in the complaint are presumed to be true and are viewed in the light most favorable to the non-moving party. *Cassettari v. County of Nevada,* 824 F.2d 735, 737 (9th Cir.1987). A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be granted only if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The question is not whether the plaintiff ultimately will prevail, but whether he cannot possibly prevail even if the allegations in the complaint are assumed to be true. The court may not dismiss a claim merely because the pleadings indicate that the likelihood of prevailing is remote. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Nor, at this stage of the proceedings, does the court consider whether there is any evidence to support the allegations that have been made in the complaint.

**DISCUSSION**

A. Section 1981

Section 1981, which prohibits racial discrimination in the making and enforcement of contracts provides, in part:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(B) "Make and enforce contract" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (1991). To establish a violation of § 1981, plaintiff must show that (1) he is a member of a racial minority; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F.Supp.2d 1066, 1069 (S.D.Cal.2000) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996)); *Harrison v. Denny's Restaurant, Inc.*, 1997 WL 227963, at *2 (N.D.Cal.1997).

For purposes of this motion, the first two elements of the violation are undisputed with respect to whether the request by U.S. Bancorp for Allen to remove his sunglasses violated § 1981[1]. The complaint alleges that Allen is an African–American male; and that he was treated differently from his white counterparts with regard to wearing sunglasses inside the bank. The dispute centers on the third element of the violation, whether the discrimination concerned the making or enforcing of a contract. Allen contends that the third element is satisfied by the allegations in the complaint. Specifically, he argues that U.S. Bancorp subjected him to an additional contractual condition—removing his sunglasses—because of his race. According to Allen, the requirement that he remove his sunglasses to receive service at the bank had the effect of altering the terms and conditions of his contractual relationship with the bank solely on the basis of race. In addition, during oral argument, counsel argued that Allen was denied benefits of his contract when he was delayed as a result of being asked to remove his sunglasses and transfer to another line.

US Bancorp contends that Allen's complaint fails to satisfy the third element because Allen was not prevented from making his deposit. Relying on *Jeffrey v. Home Depot*, U.S. Bancorp argues that Allen was not denied any contractual rights simply by being asked to remove his sunglasses. 90 F.Supp.2d 1066. In *Jeffrey*, an African American customer brought an action against a store alleging a violation of § 1981 when the store clerk asked to search his bag based solely on his race. *Id.* at 1067. In considering the third element of a § 1981 claim, the court stated "for the discrimination to be actionable under § 1981, it must result in the '*actual loss* of a contract interest.'" *Id.* at 1069 (quoting *Morris*, 89 F.3d at 414–15 (African American customers of Office Max approached by police requesting identification and answers to questions did not have a claim under § 1981 because they were not denied admittance or service)); *See also Harrison*, 1997 WL 227963, at *3 (forty-five minute delay in service based on race did not constitute a denial of service); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521 (7th Cir.2000) (assistant manager's refusal to serve customer did not establish § 1981 violation because customer could have sought service from other salespeople); *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir.2002)(court dismissed complaint where store's alleged discriminatory surveillance of customer did not prevent customer from purchasing merchandise).

In response, Allen relies on *Washington v. Duty Free Shoppers, Ltd.*, 710 F.Supp. 1288 (N.D.Cal.1988), in support of his argument that U.S. Bancorp's request to remove his sunglasses imposed on him an

---

**1.** Although the complaint also alleges that Allen was asked to move to another line to make his deposit, there are no allegations in the complaint to suggest this request was racially motivated. The court is unable to discern from the record whether, for example, Allen was asked to change lines because that teller window closed or whether other white customers with like accounts were allowed to conduct business after Allen was asked to move to another line.

additional contractual condition. In *Washington,* African American customers alleged they were denied service to the duty free store on the basis of race. *Id.* at 1288–89. The court denied defendant's summary judgment motion on the ground that there was a genuine issue as to whether defendants had an intent to discriminate against the African American plaintiffs when defendants required them to produce a passport or airline ticket before being allowed to shop in the store. *Id.* at 1289–90. The court, however, did not consider the third element at issue in this case; namely, whether there was an actual loss of a contract interest. With the exception of *Washington,* Allen relies solely on district court cases from other circuits in support of his position. Although out-of-circuit district court cases are neither binding on this court or persuasive authority, the court has considered the cases set forth in Allen's response and finds them distinguishable from the instant case.

There is no dispute that Allen was treated differently from his white counterparts when he was asked by a U.S. Bancorp employee to remove his sunglasses. However, the bank's conduct did not result in an actual loss to Allen of a contract interest. There is no basis for finding that the disparate request to remove his sunglasses added a term to his contractual relationship with the bank.

Further, there is no specific allegation that the request for Allen to transfer to another line was racially motivated. From the record it appears Allen was able to make his deposit in the normal course. There has been no evidence presented regarding the length of time, if any, Allen was delayed as a result of being asked to remove his sunglasses or, for that matter, change lines. In addition, it is clear from district court case law in this Circuit that

some delay may occur before § 1981 is violated.

US Bancorp's motion to dismiss Allen's cause of action under 42 U.S.C. § 1981 for failure to state a claim should be granted.

**B. Or.Rev.Stat. § 659A.403**

■ Section 659A.403 of the Oregon Revised Statutes provides in relevant part:

(1) All persons … shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race ….

Or.Rev.Stat. § 659A.403.

Both parties rely on *King v. Greyhound Lines,* 61 Or.App. 197, 656 P.2d 349 (1982), to support their positions. In *King,* plaintiff was subjected to racial epithets and slurs as he attempted to return a ticket for a refund, which he ultimately received. *Id.* at 199–200, 656 P.2d 349. Thus, plaintiff was not refused service but the manner in which he received the refund was discriminatory. *Id* at 201, 656 P.2d 349.

In reversing the trial court's refusal to find a statutory violation, the court stated: "the statutory prohibition against 'distinction, discrimination or restriction' on the basis of race encompasses more than the outright denial of service. It also proscribes serving customers of one race in a manner different from those of another race." *Id.* at 202, 656 P.2d 349.

In reviewing the legislative history of Or.Rev.Stat. § 30.670 (renumbered to Or. Rev.Stat. § 659A.403), the court stated:

There is little legislative history describing what is meant by the terms "distinction, discrimination or restriction." Similarly, the few cases construing the act are concerned with what constitutes "a place of public accommodation" and consequently offer little guidance on the

issue presented. However, it is clear that the general intent of the legislation when it was enacted in 1953 was to prevent "operators and owners of businesses catering to the general public from subjecting Negroes to oppression and humiliation . . . ." To hold that verbal abuse can be a "distinction, discrimination or restriction" on the basis of race is consistent with this broad legislative purpose. Moreover, that interpretation recognizes that the chief harm resulting from the practice of discrimination by establishments serving the general public is not the monetary loss of a commercial transaction or the inconvenience of limited access but, rather, the greater evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity.

*Id.* at 202–03, 656 P.2d 349 (internal citations and emphasis omitted).

US Bancorp argues that in this case there are no allegations of racial incentive. In addition, U.S. Bancorp contends that the Oregon state law claim is insufficient because Allen was not denied access to the bank and was able to complete his transaction. It is clear from *King* that § 659A.403 includes more than an "outright denial of service." Rather, the issue is whether Allen was treated in an "unequal" manner because of his race and whether that treatment resulted in an injury to him.

At this juncture all allegations in Allen's complaint are presumed true and viewed in a light most favorable to him. Allen's complaint alleges that he was subjected to discriminatory treatment when he was asked to remove his sunglasses and his white counterparts were not, which resulted in him suffering embarrassment and humiliation. These allegations are sufficient to state a claim under Or.Rev.Stat. § 659A.403. U.S. Bancorp's motion to dismiss Allen's cause of action under Or.Rev. Stat. § 659A.403 for failure to state a claim should be denied.

## C. Supplemental Jurisdiction

Title 28 U.S.C. § 1367, which applies to cases commenced after December 1, 1990, provides the basis for supplemental jurisdiction:

> Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Subsection (c) of 28 U.S.C. § 1367 gives the court discretion to "decline to exercise" supplemental jurisdiction in various circumstances including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The comments to the rule note:

> Whether a dismissal of the touchstone claim should bring about a dismissal (or remand, in a removal situation) of the dependent claim for want of supplemental jurisdiction should hinge on the moment within the litigation when the dismissal of the touchstone claim takes place . . . . If for example, the main claim is dismissed early in the action, before any substantial preparation has gone into dependent claims, dismissing or remanding the latter upon declining supplemental jurisdiction seems fair enough.

28 U.S.C.A. § 1367, p. 224 (West Supp. 1991). Here, U.S. Bancorp has filed a single motion to dismiss in response to

Allen's complaint, with an answer yet to be filed. As such, the court should decline to exercise jurisdiction over the remaining state law claim and the complaint should be dismissed.

## CONCLUSION

Based on the foregoing, U.S. Bancorp's Rule 12(b)(6) Motion to Dismiss (doc. # 4) should be GRANTED, in part, and DENIED, in part. In addition, the court should decline to exercise supplemental jurisdiction over Allen's remaining state law claim and, therefore, his complaint (doc. # 1) should be DISMISSED.

## SCHEDULING ORDER

Objections to these Findings and Recommendation(s), if any, are due November 12, 2002. If no objections are filed, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than November 26, 2002. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

Oct. 29, 2002.