González, J.
*850 ¶ 1 The Washington Law Against Discrimination (WLAD) makes it unlawful for "any person or *851 the person's agent or employee to commit an act [of] discrimination ... in any place of public ... accommodation." RCW 49.60.215. Christopher Floeting alleges that a Group Health Cooperative employee repeatedly sexually harassed him while he was seeking medical treatment. Sexual harassment is a form of sex discrimination. Group Health argues that we should import workplace sexual harassment doctrines into the public accommodations context, categorically limiting employer liability. We decline to do so and affirm.
BACKGROUND
¶ 2 Floeting had been a member and patient of Group Health, a nonprofit health care system, for over 35 years. Group Health is a place of public accommodation. Floeting alleges that beginning in July 2012, he was repeatedly sexually harassed by a Group Health employee during his regularly scheduled medical appointments. He filed a complaint with Group Health, and Group Health investigated. Two weeks later, Group Health terminated the employee.
¶ 3 Floeting sued Group Health for the unwelcome and offensive sexual conduct he experienced. The trial court dismissed his claim on summary judgment, presumably pursuant to Group Health's argument that the employment discrimination standard applies.[1] The Court of Appeals reversed. Floeting v. Grp. Health Coop., 200 Wash. App. 758, 403 P.3d 559 (2017). We granted review. Floeting v. Grp. Health Coop., 190 Wash.2d 1007, 409 P.3d 1063 (2018).
ANALYSIS
¶ 4 Group Health challenges employer liability for the discriminatory actions of its agents and employees and *852 challenges the legal test used by the Court of Appeals. We decline to import doctrines developed for the employment context into the public accommodations context. We hold that under the plain language of WLAD, employers are directly liable for the sexual harassment of members of the public by their employees, *41 just as they would be if their employees turned customers away because of their race, religion, or sexual orientation.
¶ 5 Since both of Group Health's challenges present questions of law, our review is de novo. Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002) (citing State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001) ). When reviewing a statute, the court will give effect to the statute's plain language. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). In determining if the statute is plain, we will consider the ordinary meaning of words, basic rules of grammar, and statutory context. Citizens All. for Prop. Rights Legal Fund v. San Juan County , 184 Wash.2d 428, 435, 359 P.3d 753 (2015).
¶ 6 The legislature has declared "that practices of discrimination ... threaten[ ] not only the rights and proper privileges of [Washington's] inhabitants but menace[ ] the institutions and foundation of a free democratic state." RCW 49.60.010. The legislature has also directed us to liberally construe WLAD to eradicate discrimination, including discrimination in places of public accommodation. RCW 49.60.010, .020; see also Jin Zhu v. N. Cent. Educ. Serv.Dist.-ESD 171, 189 Wash.2d 607, 614, 404 P.3d 504 (2017) (quoting Marquis v. City of Spokane, 130 Wash.2d 97, 108, 922 P.2d 43 (1996) ).
¶ 7 Under RCW 49.60.030(l)(b), WLAD secures the right to "full enjoyment" of any place of public accommodation, including the right to purchase any service or commodity sold by any place of public accommodation "without acts directly or indirectly causing persons of [a protected class]
*853 to be treated as not welcome, accepted, desired, or solicited." See RCW 49.60.040(14). Similarly, WLAD prohibits "any person or the person's agent or employee [from committing] an act which directly or indirectly results in any distinction, restriction, or discrimination" based on a person's membership in a protected class. RCW 49.60.215 (emphasis added). This broad standard focuses the liability inquiry on whether actions resulted in discrimination, not whether the proprietor of a place of public accommodation intended to discriminate.
¶ 8 Floeting alleges a Group Health employee sexually harassed him. Sexual harassment is a form of sex discrimination, which we analyze like other forms of discrimination in places of public accommodation. See Dana E. Blackman, Refusal To Dispense Emergency Contraception in Washington State: An Act of Conscience or Unlawful Sex Discrimination? , 14 MICH. J. GENDER & L. 59, 72 (2007) ("absent distinguishing factors, the various protected classes should be treated similarly under the law"); cf. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).
¶ 9 More than twenty years ago, we set forth the standard for establishing a prima facie case of discrimination in a place of public accommodation under RCW 49.60.215. See Fell v. Spokane Transit Auth., 128 Wash.2d 618, 637, 911 P.2d 1319 (1996).[2] Fell established that in order to make a prima facie case of discrimination under RCW 49.60.215, a plaintiff must prove that (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination. Id. ; see *854 also Demelash v. Ross Stores, Inc., 105 Wash. App. 508, 525, 20 P.3d 447 (2001) (applying same analytical framework). In all the time since, the legislature has not seen fit to amend WLAD to impose a different standard on claims of discrimination in places of public accommodation.
¶ 10 Instead of the traditional public accommodation claims test, Group Health argues that the framework developed to analyze sex discrimination committed by an employee against a coworker should apply. In *42 the employment context, a plaintiff alleging workplace sexual harassment must show (1) the conduct was unwelcome, (2) the conduct was because of sex, (3) the conduct affected the terms or conditions of employment, and (4) the harassment can be imputed to the employer because the employer (i) authorized, knew of, or should have known of the harassment and (ii) failed to take reasonably prompt and corrective action. Glasgow v. Ga.-Pac. Corp., 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985) (holding sexual harassment deprived plaintiff of a workplace free of sex discrimination).
¶ 11 Group Health argues that the Glasgow employment discrimination standard "applies seamlessly" and therefore it should apply. Pet. for Review at 10. It also suggests that if we do not apply the agency principles articulated in Glasgow, we would be creating a "double standard" whereby sexual harassment claims are treated differently in different contexts. Id. at 14-15. Group Health also argues that the Court of Appeals incorrectly imposed a standard that rejects consideration of severity or pervasiveness of the treatment. Id. at 15.
¶ 12 But we treat employment discrimination claims differently from public accommodation discrimination claims because WLAD treats them differently. An employee alleging employment discrimination must show that the misconduct affected the "terms or conditions of [their] employment." RCW 49.60.180(3) ; Glasgow, 103 Wash.2d at 405-06, 693 P.2d 708. The employment discrimination statute is limited to unfair practices by an "employer" by operation of the language *855 "It is an unfair practice for any employer[ ] [t]o ..." RCW 49.60.180. In contrast, WLAD provisions prohibiting discrimination in a public accommodation do not limit themselves to the "terms or conditions" of a public accommodation. See RCW 49.60.215. Discrimination by "any person or the person's agent or employee" is an unfair practice in a public accommodation, id. ; in this context, the person subject to WLAD broadly includes, among others, individuals, corporations, owners, proprietors, managers, and employees. RCW 49.60.040(19). Floeting's claim is more of a consumer claim than a claim between an employee and employer, and his claim is not limited by the employment discrimination statute.
¶ 13 WLAD protects the customer's "full enjoyment" of the services and privileges offered in public accommodations. RCW 49.60.030(l)(b). WLAD's broad definition of "full enjoyment" extends beyond denial of service to include liability for mistreatment that makes a person feel "not welcome, accepted, desired, or solicited." RCW 49.60.040(14). Denial or deprivation of services on the basis of one's protected class is an affront to personal dignity. See Obergefell v. Hodges, --- U.S. ----, 135 S.Ct. 2584, 2604, 2607-08, 192 L.Ed.2d 609 (2015) (denial of marriage equality works a "grave and continuing harm"). The "fundamental object" of laws banning discrimination in public accommodations is "to vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.' " Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 250, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (quoting S. REP. NO. 88-872, at 16-17 (1964) ).[3]
*856 ¶ 14 WLAD makes it unlawful for "any person or the person's agent or employee to commit an act" of, among other things, discrimination in a place of public accommodation. RCW 49.60.215. This provision imposes direct liability on employers for the discriminatory conduct of their agents and employees. We can say it no better than the Court of Appeals:
It is an unfair practice for "any person or the person's agent or employee" to commit a forbidden act. RCW 49.60.215(1). This language attributes responsibility for the agent's or employee's discriminatory act to *43 the "person" (employer) without mention of the doctrines of vicarious liability or respondeat superior. In this way, the legislature chose to fight discrimination in public accommodations by making employers directly responsible for their agents' and employees' conduct.
Floeting, 200 Wash. App. at 770, 403 P.3d 559. Grafting Glasgow's rule imputing liability to an employer only where the employer "authorized, knew, or should have known" of the discriminatory conduct and "failed to take reasonably prompt and adequate corrective action," 103 Wash.2d at 407, 693 P.2d 708, would significantly undermine the legislature's clear language. It is the province of the legislature to establish standards of conduct and attendant rules of liability, and the legislature determined direct liability is appropriate here. See, e.g., United States v. Park, 421 U.S. 658, 672-73, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) (Congress imposed heightened standard of care on food sellers, even where no awareness of wrongdoing); cf. Anderson v. Pantages Theatre Co., 114 Wash. 24, 29, 194 P. 813 (1921).
¶ 15 Group Health contends that it should not be held liable for "unforeseeable acts of an employee." Suppl. Br. of Pet'r at 16. But RCW 49.60.215 is not a negligence statute where foreseeability matters; it imposes direct liability for discriminatory acts, regardless of the culpability of the actor. Group Health also contends that we should apply a different standard to the acts of frontline employees than we do to supervisors. Nothing in the text of WLAD supports *857 that approach. " '[A] rule that only actions by supervisors are imputed to the employer would result, in most cases, in a no liability rule.' " Br. of Amici Curiae Legal Voice & Korematsu Center at 11 (quoting Arguello v. Conoco, Inc., 207 F.3d 803, 810 (5th Cir. 2000) ).[4] This would not be consistent with the legislature's express directions.
¶ 16 Group Health suggests we should apply an agency or vicarious liability lens to employer liability for employee conduct under RCW 49.60.215. This would require us to ignore both the plain language of the statute and the larger statutory scheme. The statute makes it unlawful for "any person or the person's agent or employee to commit an act [of] discrimination ... in any place of public ... accommodation." RCW 49.60.215. Of the fourteen "unfair practices" provisions under WLAD, employers are directly liable for the acts of employees in only two instances: (1) the relevant public accommodations provision here and (2) the provision making discrimination against persons with disabilities who use service animals unlawful, RCW 49.60.218. These provisions' direct liability language stands in contrast to the other dozen provisions. See Br. of Amici Curiae Legal Voice & Korematsu Center at 7-8 (collecting statutes). All provisions target "unfair practices" but are defined in a context specific manner. There is no statutory support for the argument that an employer must know about the discrimination or have an opportunity to take corrective action before liability may be imposed. See generally Tafoya v. Human Rights Comm'n, 177 Wash. App. 216, 224, 311 P.3d 70 (2013) (applying Glasgow's employment standard to housing context because the statutes in those contexts were similar).
*858 ¶ 17 Group Health also argues that we should adopt Glasgow's "severe" or "pervasive" requirement for sexual harassment claims in places of public accommodation. Suppl Br. of Pet'r at 17. We decline to do so. There is no statutorily required pervasiveness or severity requirement for discriminatory conduct in the public accommodations context. See ch. 49.60 RCW.[5] A single discriminatory *44 act in a place of public accommodation may violate WLAD. See, e.g., King v. Greyhound Lines, Inc., 61 Or. App. 197, 199-201, 656 P.2d 349 (1982) (interpreting a provision similar to the WLAD and holding bus company liable for an employee's use of two racial slurs toward a customer); accord Evergreen Sch. Dist. No. 114 v. Wash. State Human Rights Comm'n, 39 Wash. App. 763, 774, 695 P.2d 999 (1985).
¶ 18 We agree with the Court of Appeals when it noted:
To be actionable, the asserted discriminatory conduct must be objectively discriminatory. By this we mean that it must be of a type, or to a degree, that a reasonable person who is a member of the plaintiff's protected class, under the same circumstances, would feel discriminated against (as described in subsections [RCW 49.60].040(14) and .215(1) ). This is an objective standard.
Floeting, 200 Wash. App. at 773-74, 403 P.3d 559 (emphasis added). This is the reasonable person test applied in the public accommodations context. See generally State v. Trey M ., 186 Wash.2d 884, 888, 383 P.3d 474 (2016) (describing the "reasonable person" standard).
¶ 19 That said, we stress that plaintiffs must show more than " 'mere rhetoric that is subjectively offensive.' " Floeting, 200 Wash. App. at 773, 403 P.3d 559 (quoting Evergreen Sch. Dist., 39 Wash. App. at 772-73, 695 P.2d 999 ); see also Kahn v. Salerno, 90 Wash. App. 110, 118, 951 P.2d 321 (1998) ("Laws against discrimination are 'not directed against unpleasantness per se. ' "
*859 (quoting Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1145 (7th Cir. 1997) ) ). But taking his allegations as true, as we must at this stage, Floeting alleged more than subjectively offensive rhetoric from Group Health's employee. He alleged that he "objectively received substandard treatment." Clerk's Papers at 390. Repeated, express, and outrageous sexual harassment, as alleged here, satisfies the objective standard.
¶ 20 The test we adopt imposes strict liability to the extent it does not allow an employer to escape liability by asserting a lack of fault. According to Black's Law Dictionary, "strict liability" is "[l]iability that does not depend on proof of negligence or intent to do harm but that is based instead on a duty to compensate the harms proximately caused by the activity or behavior subject to the liability rule." BLACK'S LAW DICTIONARY 1055 (10th ed. 2014). In this case, Group Health will be liable if its employee caused the harm prohibited by the statute, even if it did not participate in the discrimination and was not negligent in training or supervising its employees. Therefore, Group Health is subject to strict liability for the discriminatory conduct of its employee in a place of public accommodation.
¶ 21 The statute's current language requires this reading. RCW 49.60.215 states, "It shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in ... discrimination" on the basis of sex. The statute already holds agents and employees liable for their own actions by virtue of how it defines "person":
"Person" includes one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, agent, or employee , whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivision thereof.
*860 RCW 49.60.040(19) (emphasis added). We therefore must interpret "any person or the person's agent or employee" to mean something more than that each person is liable for their own actions. See State v. Roggenkamp, 153 Wash.2d 614, 624, 106 P.3d 196 (2005) (" 'each word of a statute is to be accorded meaning' " (quoting State ex rel. Schillberg v. Barnett, 79 Wash.2d 578, 584, 488 P.2d 255 (1971) ) ); In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 767, 10 P.3d 1034 (2000) (" '[T]he drafters of legislation ... are presumed to have used no superfluous words and we must accord meaning, if possible, to *45 every word in a statute.' " (second alteration in original) (quoting Greenwood v. Dep't of Motor Vehicles, 13 Wash. App. 624, 628, 536 P.2d 644 (1975) ) ); State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (" 'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " (internal quotation marks omitted) (quoting Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) ) ). Reading the statute to make employers liable for the actions of their employees in this context, even when the employer itself is not at fault, has this effect.
¶ 22 The dissent argues that if we read RCW 49.60.215 to impose strict liability, then we must also apply strict liability to RCW 49.60.180(3), the employment discrimination statute, because the latter statute "clearly states employers will be liable for discrimination occurring in the terms or conditions of employment." Dissent at 48. This is incorrect. RCW 49.60.215 states that it is an unfair practice for "any person or the person's agent or employee" to discriminate, while RCW 49.60.180(3) imposes liability only on an employer who discriminates. RCW 49.60.180(3) does not directly impose liability for the actions of the employer's agents and employees ("It is an unfair practice for any employer ... [t]o discriminate against any person in compensation or in other terms or conditions of employment."). Because RCW 49.60.180(3) prohibits only the employer itself from discriminating, it requires a showing of *861 fault by the employer if the discrimination was perpetuated by an employee. The same is not true of RCW 49.60.215.
¶ 23 The dissent is concerned that strict liability would do little to eradicate discrimination because employers could not escape liability by showing that they acted diligently to prevent and remedy the discrimination. However, if employers know that the only way they can prevent lawsuits is by preventing their employees from discriminating at all, they will try even harder to make sure that their employees are well trained, are well supervised, and do not discriminate. In addition, it gives employers an incentive to end any alleged discrimination as soon as possible, limiting their exposure to damages. This will encourage employers to focus on preventing discrimination, rather than merely punishing employees when it occurs. Prevention will better further the legislative goal of eradicating discrimination in places of public accommodation.
¶ 24 Finally, an employer will still have some defenses available. An employer could still argue to the jury, for example, that the discrimination did not happen at all, that it did not meet the objective or subjective standards required by the statute and therefore was not an unfair practice, or that the person who committed the discrimination was not its agent or employee. What strict liability does preclude are claims that an employer is not liable because it was not negligent and did not intend to do harm. RCW 49.60.215 imposes strict liability on employers for the actions of their employees.
CONCLUSION
¶ 25 Under the plain language of WLAD, employers are liable for their employees' discriminatory conduct toward a customer in a place of public accommodation. The Glasgow standard does not apply to claims of discrimination in places of public accommodation. We affirm the Court of *862 Appeals and remand for further proceedings consistent with this opinion.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Owens, J.
Stephens, J.
Gordon McCloud, J.
Yu, J.

The trial judge did not explain his reasoning. As it does here, Group Health argued that Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 406, 693 P.2d 708 (1985), should control. In other words, Group Health asserts that an employer is not liable for the discriminatory conduct of its employee if it did not know about the conduct.

Group Health argues that Fell does not control because the discrimination in that case was not by a nonsupervisory employee, but the plain language of WLAD does not make this distinction.

Amici universities are concerned about the State's obligation to protect free speech and academic freedom. This is an interesting and important issue, especially when the place of public accommodation is provided by the government, which is not the case here. No party has raised the issue, and we decline to speculate about it. We note, however, that sexual harassment, as defined for purposes of the Washington Law Against Discrimination, is not protected speech. Tafoya v. Human Rights Comm'n, 177 Wash. App. 216, 229, 311 P.3d 70 (2013).

Arguello concerns a claim of public accommodations discrimination under the federal civil rights statute 42 U.S.C. § 1981 and § 2000a. Arguello, 207 F.3d at 808-09. Title II of the Civil Rights Act of 1964 does not refer to the "person" who may be liable or contain a relevant definition. For this reason, liability under federal law is usually limited to instances where the common law doctrines of vicarious liability or respondeat superior impose liability. Unlike federal law, the comprehensive language in WLAD supports a reading of both direct and vicarious liability. See RCW 49.60.215.

Other jurisdictions have similarly declined to apply employment discrimination standards where irrelevant and inapplicable. See, e.g., City of Minneapolis v. Richardson, 307 Minn. 80, 86-87, 239 N.W.2d 197 (1976) ; Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257-58 (4th Cir. 2001).