[No. 36472-3-I.    Division One.    May 5, 1997.]

Kathleen Negron, et al., *Appellants*, v.
Snoqualmie Valley Hospital, *Defendant*, Overlake
Hospital, *Respondent*.

580

*Julie M. Schisel, Ellen Chestnut,* and *Law Offices of Linn & Schisel*; and *Lonnie G. Davis,* for appellants.

*Mary K. McIntyre, Lee M. Barns,* and *McIntyre & Barns,* for respondent.

BECKER, J. — Kathleen and Rafael Negron, who are deaf, appeal the dismissal of their discrimination claims on summary judgment. We reverse and remand for trial.

Under the Washington Law Against Discrimination it is a civil right to be free from discrimination in public accommodations based on a sensory disability.[1] Discrimination in a place of public accommodation is actionable.[2] A prima facie claim requires four elements: (1) plaintiff has a disability; (2) defendant's establishment is a place of public accommodation; (3) defendant discriminated against plaintiff by providing treatment that was not comparable to the level of designated services provided to individuals without disabilities; and (4) the disability was a substantial factor causing the discrimination.[3]

Overlake Hospital concedes the Negrons each have a disability, and the hospital is a place of public accommodation. The third element — whether there was discrimination — is at issue in this appeal. Overlake's motion for summary judgment asked the court to rule as a matter of law that

---

[1]RCW 49.60.030(1):

The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical disability . . . is recognized as and declared to be a civil right. This right shall include, but not be limited to:

. . .

(b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement[.]

See also RCW 49.60.215 (unfair practice to discriminate in place of public accommodation).

[2]RCW 49.60.030(2): "Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both[.]"

[3]Fell v. Spokane Transit Auth., 128 Wn.2d 618, 637, 911 P.2d 1319 (1996).

the hospital had reasonably accommodated the Negrons' disability and therefore did not discriminate.

Because this is an appeal from a summary judgment, this court engages in de novo review.[4] The documentary evidence considered by the court, viewed in the light most favorable to the Negrons, establishes the following as the basis for their claim.

Plaintiff Kathleen Negron and her husband both use American Sign Language as their primary means of communication. Mr. Negron understands very little written English because his second language is Spanish.

On March 5, 1991, Ms. Negron arrived at Snoqualmie Valley Hospital[5] with severe pneumonia and possible sepsis (pathogenic microorganisms in the blood). After consulting a pulmonary specialist, Ms. Negron's personal physician decided to transfer her immediately to Overlake Hospital.

By the time she arrived at Overlake, Ms. Negron was mentally confused, and her physical condition had deteriorated to the point that she almost died. She was apparently still able to move, though, because she attempted to remove some catheters. Hospital staff restrained Ms. Negron's hands, thereby eliminating a possible means of communication.

Overlake Hospital is a member of the Seattle Area Hospital Council which at the time of Ms. Negron's hospitalization had a contract with the Community Service Center for the Deaf and Hard of Hearing. Under the contract, the Center for the Deaf provides interpretive services to council hospitals for scheduled appointments or emergencies. In the afternoon of March 5, the day Ms. Ne-

---

[4]*Fell*, 128 Wn.2d at 625.

[5]Snoqualmie Valley Hospital was a defendant in this case. The trial court granted summary judgment in favor of Snoqualmie, and the Negrons appealed. Snoqualmie cross-appealed the trial court's refusal to strike the affidavit of Cindy Johns. Before oral argument of the appeals, Snoqualmie settled all claims with the Negrons, and was dismissed from this case altogether. We maintain the same case caption, as required by RAP 3.4.

gron was admitted, Overlake called the Center to request an interpreter. No one answered. The caller left a message. The message was a nonemergency request for an interpreter to be provided the next day. Overlake called the Center a second time, but again received no answer. At 4:30 that afternoon, the Center returned Overlake's call and said that no interpreter was available until 7:00 the next morning. Overlake did not call the emergency number at the Center, which could have dispatched an interpreter immediately. Nor did Overlake indicate in the messages that an emergency interpreter was needed.

Fortunately, Ms. Negron's condition improved. The next morning, March 6th, and occasionally throughout her two-week stay at Overlake, the hospital provided a sign-language interpreter. The presence of the interpreter, however, did not always coincide with the presence of a physician.

After her release, Ms. Negron continued to see a doctor regarding infections on her fingers and toes resulting from her illness. Due to a sudden onset of symptoms, Ms. Negron was admitted to Overlake again on April 3 for amputation of the tips of her fingers and toes. This time Overlake did make an emergency request to the Center for the Deaf, asking at 2:30 p.m. for an interpreter for pre-operation communications from 5:00 to 7:00 that evening. The Center was unable to provide an interpreter on short notice, but the hospital was able to obtain assistance from a capable visitor who happened to be on the premises. The Center provided interpreters after the operation and on two other occasions during Ms. Negron's eight-day stay.

The Negrons filed a handicap discrimination suit against Overlake, claiming the hospital failed to reasonably accommodate their deafness. Overlake moved for summary judgment dismissal of all plaintiff's claims with prejudice, claiming that "[r]easonable minds could not differ with the premise that entering into such a contract [with the Center for the Deaf] was a reasonable method of accommodating any patients with hearing disabilities who might seek treatment at Overlake."

The Negrons responded, declaring that the hospital's failure to provide adequate interpreting services at critical moments left Ms. Negron isolated, frightened and unaware of her medical condition. Ms. Negron declared:

> I felt very vulnerable, fearful and helpless during my admissions . . . at Snoqualmie Valley and Overlake Hospitals when I knew I was ill but did not know what was wrong, how ill I was or what was going to be done, in observing my daughter experiencing my emergency room admission. Since these admissions I have had nightmares and recurrent recollections of my experiences in Snoqualmie Valley and Overlake and dream about being in a medical setting without being able to communicate.

Mr. Negron declared: "I felt very helpless and unable to be of support to [my wife] because I was uninformed about her condition."

The Negrons' responsive materials included a declaration from Cindy Johns, a mental health counselor who treated Ms. Negron for posttraumatic stress disorder. During therapy, Ms. Negron told Ms. Johns "she did not know what was happening during her entire hospitalization," and described the incident as "dehumanizing" and "like being raped." Ms. Johns stated, "Lack of communication access to information about her medical condition created an environment where Ms. Negron felt confused, frightened, and unable to exert any control on her environment." She offered her professional opinion "that the lack of access to communication may have significantly increased the severity of Ms. Negron's trauma."

The court below recognized the existence of an issue of material fact "as to whether Overlake discriminated against the [Negrons] by failing to provide reasonable accommodation." Nonetheless, the court dismissed plaintiffs' claim for failure "to make an adequate showing of damages as a result of Overlake's conduct . . . ."

The Negrons appeal from the trial court's order of dismissal. Overlake cross-appeals, claiming that the court should have (1) concluded as a matter of law that the hospital met all applicable legal requirements for accom-

modating Ms. Negron's deafness, and (2) refused to consider the declaration of Cindy Johns.

## DISCRIMINATION

We first consider whether the Negrons raised an issue of fact as to whether Overlake discriminated against Ms. Negron because of her hearing disability. The test for discrimination is set forth in *Fell v. Spokane Transit Auth.*,[6] which was decided after the summary judgment order in this case. In *Fell*, disabled persons challenged a municipal paratransit plan designed to transport elderly and disabled persons to fixed public transportation routes. Plaintiffs contended the plan discriminated against them because it would reduce certain services, and the city had sufficient resources to provide those services. The trial court granted summary judgment in favor of the plaintiffs. The Supreme Court reversed and remanded, holding there is disability discrimination under RCW 49.60.215 only when the disabled are not provided with services comparable to the service provided to the nondisabled. *Fell* establishes for places of public accommodation a "test of comparable treatment."[7]

"Comparable" does not mean identical. In discussing comparability, the *Fell* court relied on cases from the employment setting, including *Holland v. Boeing Co.*[8] The *Holland* court recognized that treating a disabled employee identically to a nondisabled employee may constitute discrimination. An employer therefore has a duty to reasonably accommodate an employee's physical limitations. Similarly, places of public accommodation may be required to reasonably accommodate disabled patrons in

---

[6]*Fell*, 128 Wn.2d 618, 911 P.2d 1319 (1996).

[7]*Fell*, 128 Wn.2d at 636.

[8]*Holland v. Boeing Co.*, 90 Wn.2d 384, 388-89, 583 P.2d 621 (1978). *See also Dean v. Municipality of Metro. Seattle*, 104 Wn.2d 627, 708 P.2d 393 (1985).

order to provide them with treatment comparable to the treatment received by nondisabled persons.[9]

Treatment received in a hospital generally includes not only medical intervention, but also the opportunity to explain symptoms, ask questions, and understand the treatment being performed including options, if any. A reasonable accommodation to a deaf patient is one that allows a comparable opportunity, reasonable under the circumstances.

Ordinarily, the question of reasonableness presents an issue of fact.[10] Contrary to Overlake's claim, the Hospital Council's contract with the Center for the Deaf does not, at a matter of law, discharge Overlake's duty to make a reasonable accommodation of patients with hearing disabilities. The contract is ineffectual unless the hospital calls for the services of an interpreter when necessary. Overlake contends its attempts to contact the Center on the day Ms. Negron was first admitted, though unsuccessful, were legally sufficient under the Law Against Discrimination. But the hospital does not explain why it failed to call the Center's emergency number. According to the director of the Interpreter Referral Service operated by the Center, "Had an emergency interpreter been requested when the initial in-take call was made at 4:15 pm, such an interpreter could have been dispatched immediately for use that afternoon or evening." The hospital also fails to explain why it could not synchronize the visits of an interpreter with visits by attending doctors during Ms. Negron's stay at Overlake.

The record reflects that Overlake saved Ms. Negron's life. But her claim is one of discrimination, not medical negligence. Because the hospital failed to provide a means

---

[9]WAC 162-26-060(2): "In some circumstances, however, treating handicapped persons the same as nonhandicapped persons (same service) will defeat the purposes of the law against discrimination. . . . In such circumstances, the operator of the place of public accommodation should if possible use the next best solution: Reasonable accommodation."

[10]See *Phillips v. City of Seattle*, 111 Wn.2d 903, 911, 766 P.2d 1099 (1989).

of communication, a trier of fact could conclude that Overlake did not treat the Negrons comparably to nondisabled persons. The trial court properly held issues of material fact do exist as to whether the hospital discriminated against the Negrons.

## EMOTIONAL DISTRESS DAMAGES

We next consider the trial court's decision to dismiss the action because the Negrons failed to make an adequate showing of damage. Cindy Johns testified only that the hospital's conduct "may have" increased Ms. Negron's suffering beyond what was inherent in her acute illness. The hospital argues testimony offered to prove that the alleged discrimination caused injury to the Negrons must state the causal relationship as "more likely than not."

It is indeed well-settled that when medical testimony is necessary to establish causation of injury or disease, that testimony must be given by a qualified person in terms of reasonable medical probability.[11] We applied that principle in the case of *Xieng v. Peoples Nat'l Bank.*[12] The plaintiff alleged his employer discriminated against him on the basis of his national origin, thereby causing emotional distress. The plaintiff sought to show that the emotional distress depressed his immune system, resulting in a case of active hepatitis. We held he adequately proved his damages through testimony from a physician and a psychiatrist who stated their opinions in the required form.

But in a discrimination case, medical testimony is not necessary to establish causation of damage. Our courts have long recognized damage is inherent in a discriminatory act.

The act alleged in itself carries with it the elements of an as-

---

[11]*Merriman v. Toothaker*, 9 Wn. App. 810, 515 P.2d 509 (1973).

[12]*Xieng v. Peoples Nat'l Bank*, 63 Wn. App. 572, 582-83, 821 P.2d 520 (1991), *aff'd*, 120 Wn.2d 512, 844 P.2d 389 (1993). *See also Carlos v. Cain*, 4 Wn. App. 475, 477, 481 P.2d 945 (1971).

sault upon the person, and in such cases the personal indignity inflicted, the feeling of humiliation and disgrace engendered, and the consequent mental suffering, are elements of actual damages for which a compensatory award may be made.[13]

Damage is not a separate element of a prima facie case.[14] The court erred in dismissing the Negrons' suit for failure to make an adequate showing of damages.

A discrimination plaintiff may seek monetary compensation for "actual damages,"[15] including distress and mental anguish caused by discrimination, and may prove such damages through nonexpert testimony.[16] Accordingly, the trial court did not err in refusing to strike the declaration of Cindy Johns. Her opinion, that the hospital's conduct "may have" increased Ms. Negron's suffering, was inadequate to link a professional diagnosis of posttraumatic stress disorder to the hospital's conduct. But other parts of her declaration were relevant to the extent of emotional distress experienced by Ms. Negron due to the lack of an interpreter.

■ Finally, Overlake argues that emotional distress damages are cognizable only if they flow from an act of intentional discrimination. This is not so. Under RCW 49.60, a plaintiff is not required to prove that emotional distress was intended or reasonably foreseeable in order to recover damages for distress.[17] Services offered to a disabled person may fall short of comparable treatment even though the disabled person's attempts to gain access to a place of public resort are not met with outright rejection. "[D]iscrimination may arise just as surely through 'subtle-

---

[13]*Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 31, 194 P. 813 (1921).

[14]*Fell*, 128 Wn.2d at 637; *Dean*, 104 Wn.2d at 641.

[15]RCW 49.60.030(2).

[16]*See Delahunty v. Cahoon*, 66 Wn. App. 829, 842, 832 P.2d 1378 (1992).

[17]*Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 919, 726 P.2d 434 (1986); *Dean*, 104 Wn.2d 640-41.

ties of conduct' as through an openly expressed refusal to serve."[18]

Reversed and remanded for trial.

COLEMAN and ELLINGTON, JJ., concur.

---

[18]*Browning v. Slenderella Sys.*, 54 Wn.2d 440, 444, 341 P.2d 859 (1959), *overruled on other grounds, Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 484, 805 P.2d 800 (1991).