COURT OF APPEALS DIV I
2016 JUL -5  AM 9: 05

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STACIA HARTLEBEN, an individual, | No. 73758-9-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| UNIVERSITY OF WASHINGTON, | |
| Respondent. | FILED:  July 5, 2016 |

LEACH, J. — Stacia Hartleben appeals the trial court's summary judgment order dismissing her case against the University of Washington (University).  She claims that the University violated the Washington Law Against Discrimination (WLAD)[1] when it refused to provide her with free classes as a reasonable accommodation for her disability.  Because Hartleben fails to show that the University was required to waive her tuition in order to provide her comparable treatment under the WLAD, the University did not discriminate as a matter of law.  We affirm.

## FACTS

Hartleben attended Computational Linguistics master's program (Program) classes on a part-time basis at the University from 2008 through

---

[1] Ch. 49.60 RCW.

November 2011. She completed five courses in the Program. During some of the time she was enrolled, she experienced severe depression. This forced her to take hardship withdrawals or withdraw from her classes to undergo treatment.

From October to December 2011, Hartleben received electroconvulsive therapy (ECT) to treat her depression. As a side effect, she experienced retrograde amnesia or memory loss. Now she has almost no memory of the years between 2007 and the ECT. She only experiences memories in "little flashes" or pictures without context. Hartleben cannot remember the content of the Program courses she took.

In February 2013, Hartleben asked Dr. Emily Bender, a professor in the Program, if she could retake the courses she could not remember without paying tuition. Dr. Bender referred her to Disability Resources for Students (DRS) and the student health clinic. Joyce Parvi, a Program employee, suggested that she petition the Graduate School.

In March 2013, Hartleben met with Terri Dolbrich, a DRS counseling services coordinator. Hartleben asked to retake classes she had already completed without receiving credit or a grade but also without having to pay tuition. Hartleben told Dolbrich that she believed the classes would provide her interaction and feedback, which she needed due to her disability. She believed she would have a severe disadvantage if she did not retake the classes.

Although she did not then believe that law considered memory loss a disability, she considered it a disability. Dobrich indicated that she also did not believe that memory loss is a legal disability. She told Hartleben that "'if the university gave you free classes, they would have to do it for everyone.'" Dobrich then told her to petition the Graduate School.

Rebecca Aanerud, the associate dean of the Graduate School, responded to Hartleben that DRS must approve an accommodation before the Graduate School would implement it. Aanerud advised Bree Callahan, the director of DRS, that the school would not grant Hartleben's request without DRS approval but would if DRS decided Hartleben had requested a reasonable accommodation. Callahan responded that she was not sure what could be done retroactively to accommodate Hartleben but that they would consider accommodations if Hartleben moved forward in the Program. Dobrich and Callahan discussed that they did not think Hartleben had requested a reasonable accommodation because "there was no restriction on her enrolling to retake courses."

Later in March 2013, Callahan and Dobrich consulted with colleagues at the Registrar's Office and Student Fiscal Services, who said that "all students must pay tuition," "there was no circumstance under which they would not pay tuition," and they were not aware of a student taking a class but not paying for it. DRS had never received a request from a student with retrograde amnesia or a

request asking to retake classes without paying tuition as a disability accommodation.

Dobrich met with Hartleben in March in a standard "access planning" meeting and denied Hartleben's request. Dobrich formally rejected Hartleben's request for a disability accommodation by e-mail in May. Dobrich advised Hartleben that she could retake the classes or audit them but would have to pay tuition. Dobrich also told her that it would consider letting her attend on a part-time basis to give her more time to finish her degree. Dobrich referred Hartleben to the Division of Vocational Rehabilitation (DVR).

DVR evaluated Hartleben and concluded that she should work before she returned to classes and would not authorize payment for school, though a third party vendor recommended she return to school.

Hartleben filed a complaint with the University Complaint Investigation and Resolution Office (UCIRO) based on DRS's denial of her accommodation request. She sought a reasonable accommodation for her retrograde amnesia. The UCIRO investigator, Kate Leonard, conducted an investigation. She interviewed five people, including Dolbrich. She concluded that DRS's denial of Hartleben's request was not a failure to accommodate and that Dobrich did not treat Hartleben unfairly.

Leonard met with Hartleben in August and told her that the University would affirm the denial of Hartleben's request. As Hartleben left the meeting, Leonard told her she could listen to the recordings of the classes she had asked to retake and that Dr. Bender had suggested this solution. Hartleben told her she could not learn from recordings because of her focus and cognitive issues due to memory loss. She later e-mailed Dr. Bender to thank her and explain that self-study, including with recordings, was not feasible because Hartleben needed interaction in order to learn.

Hartleben then filed this lawsuit against the University, claiming that the University had violated the WLAD by failing to provide her with a reasonable accommodation. During her deposition, Hartleben characterized her "disability as memory loss, depression, anxiety and the cognitive—neurocognitive impairments left over from the ECT, including extreme focus and concentration issues when I'm not participating in a group setting." When asked if she had ever discussed her cognitive impairments with anyone at the University, she referenced her meeting with Leonard when Hartleben explained that the recordings would not be effective because of her "focus issues." The University moved for summary judgment. The trial court granted the University's motion. Hartleben appeals.

No. 73758-9-I / 6

## STANDARD OF REVIEW

This court reviews de novo an appeal from a summary judgment order.[2]

We affirm summary judgment where, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists.[3]

## ANALYSIS

Hartleben asserts that the University violated the WLAD when it refused to allow her to retake classes without paying tuition as an accommodation for her retrograde amnesia. The University responds that it fulfilled its obligations under WLAD by offering Hartleben the same services that it offers people who do not have a disability. It argues that as a matter of law the WLAD does not require it to offer Hartleben a tuition waiver as a reasonable accommodation.

The WLAD protects the right of a person with a disability to be free of discrimination in places of public accommodation, including at public universities.[4]

> It shall be an unfair practice for any person . . . to commit an act which directly or indirectly results in any distinction, restriction, or discrimination, or the requiring of any person to pay a larger sum than the uniform rates charged other persons or the refusing or withholding from any person the admission . . . in any place of

---

[2] Fell v. Spokane Transit Auth., 128 Wn.2d 618, 625, 911 P.2d 1319 (1996).
[3] Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 144, 94 P.3d 930 (2004).
[4] RCW 49.60.030(1)(b), .040(2).

-6-

public . . . accommodation . . . except for conditions and limitations established by law and applicable to all persons.[5]

The WLAD broadly defines "disability" to mean the presence of a "mental . . . impairment," including "cognitive limitation."[6]

Summary judgment is often inappropriate in discrimination cases because WLAD mandates that courts liberally construe it and because evidence often contains competing inferences of discrimination and nondiscrimination.[7] But "[c]ourts will . . . grant summary judgment when the plaintiff fails to raise a genuine issue of fact on one or more prima facie elements."[8]

To show a prima facie case of discrimination by the University, Hartleben needed to present evidence that (1) she has a disability, (2) the University is a place of public accommodation, (3) the University discriminated against her by failing to provide her with the "level of designated services provided to individuals without disabilities," and (4) Hartleben's disability was a substantial factor causing the discrimination.[9] The parties agree that Hartleben's retrograde amnesia is a disability and that the University is a place of public accommodation subject to the WLAD.

---

[5] RCW 49.60.215(1).
[6] RCW 49.60.040(7)(a), (c)(ii).
[7] Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 777, 249 P.3d 1044 (2011) (quoting Davis v. W. One Auto. Grp., 140 Wn. App. 449, 456, 166 P.3d 807 (2007)).
[8] Frisino, 160 Wn. App. at 777.
[9] See Fell, 128 Wn.2d at 637.

No. 73758-9-I / 8

We review the record to see if Hartleben raised an issue of fact about the disputed elements of a prima facie case. A place of public accommodation discriminates when it fails to provide a person with a disability treatment comparable to that which it gives a person without that disability.[10] The comparable treatment test ensures that a person with a disability receives equal opportunity while also ensuring that places of public accommodation do not have to provide unlimited levels of service.[11] "A place of public accommodation is not required to provide extra services to persons with disabilities, but it may not deny full access to services already provided."[12] The WLAD requires that a place of public accommodation provide a reasonable accommodation to a person with a disability when providing the same service or treatment it provides to persons without disabilities would not give the disabled person full enjoyment of that place.[13]

Hartleben argues that she presented sufficient evidence to create an issue of fact about whether the University treated her comparably to students without a disability and that her accommodation request was reasonable. But Hartleben

---

[10] Fell, 128 Wn.2d at 634-36.
[11] Fell, 128 Wn.2d at 631.
[12] Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 189, 293 P.3d 413 (2013).
[13] WAC 162-26-060(1), (2), -080(1).

-8-

did not present any evidence that the University failed to offer her a comparable service.

Here, the evidence shows that the University's services include classes offered in exchange for tuition. All students must pay tuition.[14] The evidence shows that the University offered Hartleben access to the classes she requested, plus several other accommodations. We conclude that these accommodations provided Hartleben a comparable service and that her request to take classes without paying tuition was not reasonable. Because Hartleben failed to show a prima facie case of discrimination, the trial court properly granted summary judgment.

Hartleben argues that this case is like <u>Negron v. Snoqualmie Valley Hospital</u>.[15] There, this court reversed the trial court's grant of summary judgment. The defendant hospital did not call an emergency number for interpretation services after it unsuccessfully tried to get an interpreter for a deaf patient being treated for a life-threatening condition.[16] The hospital did provide the patient with some access to interpreters throughout her treatment.[17] This

---

[14] Hartleben mentions in her complaint to the UCIRO that one student she spoke with sat in on classes "unofficially" without paying tuition. But without more, this does not show that the University offers this to students. And she fails to show how this passive approach to learning relates to her accommodation request for interactive learning in the classroom.

[15] 86 Wn. App. 579, 936 P.2d 55 (1997).

[16] <u>Negron</u>, 86 Wn. App. at 582-83.

[17] <u>Negron</u>, 86 Wn. App. at 583.

court determined that because hospital treatment generally includes both medical intervention and the opportunity to communicate about treatment, the hospital should provide a deaf person a reasonable opportunity to similarly communicate.[18] Because the hospital failed to provide this communication, an issue of fact existed as to whether the hospital provided the patient with services comparable to those it provided patients without a disability.[19] But, here, Hartleben cannot establish that the University provides people without disabilities access to classes without requiring them to pay tuition.

Indeed, as the University argues, by requesting a tuition waiver, Hartleben asks the University to provide her with extra services that it does not offer to other students. In Fell v. Spokane Transit Authority,[20] the Washington Supreme Court reversed summary judgment for the plaintiffs because the trial court did not evaluate if the transit authority offered comparable services to both people with a disability and those without. Plaintiffs argued that the transit authority discriminated against them because its new plan reduced services to transport elderly people and people with disabilities to fixed public transportation routes.[21] But evidence showed that the transit authority generally did not provide services outside the boundaries of its fixed routes and paratransit plan to people without

---

[18] Negron, 86 Wn. App. at 586.
[19] Negron, 86 Wn. App. at 586-87.
[20] 128 Wn.2d 618, 622, 911 P.2d 1319 (1996).
[21] Fell, 128 Wn.2d at 624.

disabilities.[22] Thus, the court held as a matter of law that the plaintiffs had not shown that the transit authority discriminated when it did not provide extra services to people with disabilities.[23] The court held that "there is discrimination [under the WLAD] only when [people with disabilities] are not provided with comparable services."[24] The WLAD does not require a place of public accommodation to provide greater services to people with disabilities than what is available to people without disabilities.[25] Thus, the trial court did not err when it determined as a matter of law that the University provided Hartleben the same opportunity to access its services that it provides students without her disability.

Hartleben also fails to show the required link between her disability and her financial need. Hartleben relies on cases decided under the federal Fair Housing Amendments Act of 1988 (FHAA),[26] where courts have held that requiring whole or partial waivers of housing-related fees may be appropriate when those fees may deny someone an equal opportunity to enjoy a dwelling due to their disability.[27] She argues that the Ninth Circuit's decision in Giebeler v.

---

[22] Fell, 128 Wn.2d at 639-40.

[23] Fell, 128 Wn.2d at 639-40.

[24] Fell, 128 Wn.2d at 635-36.

[25] Fell, 128 Wn.2d at 639-40.

[26] 42 U.S.C. § 3604.

[27] United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994) (motion to dismiss improperly granted when plaintiff did not have the opportunity to show that fees that applied to all residents for long-term guests and for guest parking were discriminatory when applied to plaintiff, whose infant required in-home care); Bentley v. Peace & Quiet Realty 2 LLC, 367 F. Supp. 2d

M&B Associates[28] supports her waiver request. In Giebeler, the court held that summary judgment was improper when an apartment complex refused to waive its policy prohibiting cosigners for a mother of a man with AIDS (acquired immune deficiency syndrome) who needed to be close to her due to his illness.[29] The court's opinion quotes a Supreme Court case, decided under the Americans with Disabilities Act (ADA or Act),[30] U.S. Airways, Inc. v. Barnett,[31] to support its holding that an accommodation can require preferential treatment of a person with a disability, "'[a]nd the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.'"[32]

---

341, 347-49 (E.D.N.Y. 2005) (motion to dismiss denied because an accommodation for a person with a disability affecting her mobility to move to a first-floor apartment without incurring a higher fee associated with the first-floor apartment is an accommodation within the purview of the ADA; court rejected under U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002), the defendant's argument that simply giving plaintiff an opportunity to rent the first-floor apartment for the amount it would normally charge fulfilled its obligations under the FHAA); Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc., 778 F. Supp. 2d 1028, 1039-40 (D.N.D. 2011) (trial court denied summary judgment to property management company where questions of fact existed regarding necessity and reasonableness of accommodation request to waive additional fees for assistance dogs of plaintiffs who have mental disabilities).

[28] 343 F.3d 1143 (9th Cir. 2003).

[29] Giebeler, 343 F.3d at 1144-45.

[30] 42 U.S.C. §§ 12181-12189.

[31] 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002); see also Wash. State Commc'n Access Project, 173 Wn. App. at 190 (Washington courts may look to interpretation of the ADA as a source of guidance.).

[32] Giebeler, 343 F.3d at 1150 (quoting Barnett, 535 U.S. at 397).

But the accommodation must be reasonable.[33] In Barnett, the Court held that when a workplace has an established seniority system, the ADA does not require that an employer reassign an employee in a manner that conflicts with that system unless the employee can show special circumstances surrounding the particular case that demonstrate that the accommodation is nonetheless reasonable.[34] Here, evidence shows that the University requires that all students pay tuition, and Hartleben has not shown that special circumstances exist to make breaking this policy reasonable. And in Giebeler, evidence showed that Giebeler's inability to meet minimum income requirements was a direct result of his disability.[35] Here, Hartleben has not shown a connection between her status as a person with a disability and her status as a person with financial hardship. She fails to explain how a tuition waiver would be a reasonable accommodation for her disability.

Further, the federal cases cited by Hartleben are specific to the FHAA. But in the context of university learning, federal courts have not required fee reductions or waivers to accommodate a student where those waivers would be unreasonable.[36] We find Lipton v. New York University College of Dentistry[37]

---

[33] Barnett, 535 U.S. at 406.

[34] Barnett, 535 U.S. at 406.

[35] Giebeler, 343 F.3d at 1147.

[36] Lipton v. N.Y. Univ. Coll. of Dentistry, 865 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2012), aff'd, 507 F. App'x 10 (2d Cir. 2013); see also Harnett v. Fielding Graduate Inst., 400 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2005) ("Plaintiff's

persuasive. In that case, the U.S. District Court for the Southern District of New York granted the university's motion to dismiss Lipton's discrimination claim because Lipton's requested accommodations were unreasonable. There, the university required students to pass a dentistry board exam within a certain period after graduation and had a policy to require rematriculation each time a student had to retake the exam.[38] After four unsuccessful attempts to pass the exam, Lipton requested reasonable accommodations that included taking the test an unlimited number of times without rematriculating and paying the accompanying fee.[39] The court decided that the requested accommodations were unreasonable for several reasons, including that they would alter important academic policies, they bore a tenuous relationship to Lipton's disability, and that his requested fee waiver had no bearing on his alleged disability.[40]

Similarly, a waiver of a tuition fee does not bear on Hartleben's performance in the Program due to her disability and is thus unreasonable. The

---

request for a reduction in tuition—a modification that is not contemplated by [Fielding Graduate Institute] policy and that is not granted to other students— would not have 'accommodated' her disability in any way. . . . Therefore, such a request does not constitute a reasonable accommodation within the meaning of the applicable statutes."), overruled on other grounds by Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

[37] 865 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2012), aff'd, 507 F. App'x 10 (2d Cir. 2013).

[38] Lipton, 865 F. Supp. 2d at 405.

[39] Lipton, 865 F. Supp. 2d at 404-07.

[40] Lipton, 865 F. Supp. 2d at 410.

University's waiver of tuition for Hartleben would only address barriers she faces due to financial hardship and not those due to her disability. Thus, Hartleben fails to raise a genuine issue of fact about the University's alleged discrimination against her by requiring her to pay tuition for classes. The trial court properly granted summary judgment to the University.[41]

Hartleben asserts that the University presented no evidence that her requested accommodation would fundamentally alter its operations as claimed by the University. When an accommodation would fundamentally alter a service, it is not reasonable.[42] Here, the University provides classes in exchange for payment of tuition. Providing classes without collecting tuition fundamentally alters its business model. Further, the University need not present this evidence until after Hartleben presented evidence of a prima facie case.[43] Because Hartleben did not, the University was under no obligation to make this showing.

Hartleben further contends that a jury should decide if the University engaged in good faith in an interactive process or investigation to determine reasonable accommodations. Parties must work in good faith to exchange

---

[41] See Frisino, 160 Wn. App. at 777.

[42] See 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.").

[43] See Fell, 128 Wn.2d at 634.

information in order to determine what reasonable accommodation best suits the plaintiff's disability.[44] The evidence shows that the University met with Hartleben several times and offered her accommodations, including access to the classes she needed to retake. But Hartleben would only accept an accommodation allowing her to take classes she needed without paying tuition, which was not a reasonable accommodation contemplated by WLAD. Thus, she cannot show that a material issue of fact exists about the University's alleged discrimination against her.

In her reply brief and at oral argument, Hartleben said she would accept an accommodation that included listening to the recordings in conjunction with a University-provided tutor so she can engage in an interactive learning process. She certainly can request this of the University. But because she did not request this accommodation from the University before this appeal, the reasonableness of this requested accommodation is not before us.

## CONCLUSION

Because Hartleben is unable to show that comparable treatment under the WLAD requires that she retake classes without paying tuition, she fails to show a

---

[44] Frisino, 160 Wn. App. at 777.

prima facie case of discrimination against the University as a matter of law. We affirm the trial court.

_Leach, J._

WE CONCUR:

_Trickey, ACJ_          _Spearman, J._