IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| GENEVA LANGWORTHY, | ) | No. 80754-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE ALTERNATIVE HUMANE | ) | UNPUBLISHED OPINION |
| SOCIETY and ADAM P. KARP, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

VERELLEN, J. — In this contract dispute regarding ownership of a dog,

Geneva Langworthy filed a complaint against Alternative Humane Society (AHS)

and Adam Karp for disability discrimination and other causes of action. The trial

court dismissed all of Langworthy's claims on summary judgment and granted

declaratory judgment in favor of AHS and Karp.[1] We affirm.

FACTS

On May 8, 2019, Langworthy went to AHS's website and completed an

online request form to relinquish her service dog Snorri to AHS. In response to a

question about why she was giving Snorri up, Langworthy stated:

---

[1] Third party Tish O'Keefe filed a motion to modify the commissioner's
December 19, 2019 ruling denying her motion to withdraw Langworthy's appeal
with prejudice. Pursuant to RAP 17.7, the motion was passed to the panel hearing
the merits of Langworthy's appeal. Because we affirm the trial court's dismissal of
Langworthy's claims, the motion is denied.

> Snorri is very well socialized around other dogs but occasionally and randomly behaves aggressively towards Jasper, my 13 year old neutered blue heeler who is very submissive. . . . No matter how much I love Snorri, I have to prioritize Jasper, my long-time buddy. We are moving to the east coast for the summer in my tiny car and I feel it will be too close quarters for harmony.[2]

On May 11, 2019, three days after completing the online request form, Langworthy brought Snorri to AHS. There, she signed a one-page "guardian release form" which states in pertinent part:

> I, G. Langworthy, am the legal guardian of the above described animal(s). I hereby voluntarily relinquish all rights and interest of guardianship in this (these) animal(s) to the AHS for the express purpose of acquiring an adoptive home for this (these) animal(s). I agree that the animal's new home will be selected by the AHS solely in accordance with the Society's adoption criteria.

> I understand that AHS will provide food, shelter and necessary veterinary care while the animal(s) is (are) under the Society's guardianship.

> . . . .

> I have read this statement in its entirety and my signature below certifies my intent to terminate any legal attachment to the above-described animal(s).[3]

After signing the agreement, Langworthy left Snorri in the possession of AHS.

Later that evening, Langworthy sent an e-mail to AHS stating, "I made a mistake, I can't do without Snorri. I can meet you somewhere tomorrow to get her back."[4] Langworthy e-mailed again the following day, stating, "I realize that legally

---

[2] Clerk's Papers (CP) at 188.

[3] CP at 190.

[4] CP at 66.

AHS now owns Snorri" but asking AHS to bring the dog back to her.[5]  An AHS representative responded that the board needed time to consider her request. Langworthy then informed AHS by letter that she would sue under the Americans with Disabilities Act (ADA) unless it agreed to "rescind the Relinquishment Contract" and return Snorri within three days.[6]  The following day, AHS's attorney Adam Karp informed Langworthy that AHS had declined her request because she signed a guardian release form "voluntarily relinquish[ing] all rights and interest in Snorri to AHS" and because AHS "believes that Snorri's best interests are not in your care."[7]

On August 8, 2019, Langworthy filed suit against AHS and Karp in the form of two pro se complaints that appeared to allege five causes of action: (1) disability discrimination under the ADA, (2) violation of RCW 9.91.170, (3) intentional infliction of emotional distress, (4) violation of RCW 9A.46.020, and (5) libel.  The relief sought included an injunction to return Snorri to her, an antiharassment order against AHS and Karp, disqualification of Karp as counsel for AHS, an injunction to require Karp to retract certain statements made on Facebook, and monetary damages.

Karp filed a motion for summary judgment dismissal of the claims against him and a motion to strike Langworthy's amended complaint.  The court granted

---

[5] CP at 68.

[6] CP at 72-74.

[7] CP at 75.

both motions and subsequently granted Karp's motion for sanctions and costs. AHS then moved for summary judgment dismissal of the claims against it and a declaratory judgment confirming AHS's rights of ownership pursuant to the guardian release form. Langworthy filed a declaration in response to AHS's motion, including affidavits and exhibits. She also filed a series of motions seeking the judge's recusal and a change of venue, to appoint a guardian ad litem for Snorri, to void the guardian release form, and to amend her complaint.

On November 15, 2019, the trial court denied Langworthy's motions, granted summary judgment dismissal of her claims against AHS, and granted declaratory judgment in favor of AHS. Langworthy filed a motion to reconsider and an amended motion to reconsider, which the court did not grant. Langworthy now appeals.

## ANALYSIS

A pro se litigant must follow the same rules of procedure and substantive law as a licensed attorney.[8] "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties."[9]

Here, Langworthy's notice of appeal designated five decisions: (1) the order awarding sanctions and judgment summary in favor of Karp, (2) the order

---

[8] Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006) (quoting Westberg v. All-Purpose Structures, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997)).

[9] Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (citing RAP 5.3(a); RAP 10.3(a), (g); RAP 12.1.).

grating AHS's motion for partial summary judgment and declaratory judgment, (3) the order dismissing all claims against AHS, (4) the order granting Karp's motion for summary judgment, and (5) the order granting Karp's motion to strike amended complaint. But Langworthy's assignments of error and substantive argumentation indicate that her challenge on appeal focuses on matters regarding AHS, not Karp.[10] Specifically, Langworthy's reply brief characterizes her appeal as "a disability discrimination case, in which a disabled service dog user requested help from a private humane society while injured and ill, and has been deprived of her service dog thru a deceptive 'guardian release' form." Appellant's Reply Brief at 1. We address her arguments accordingly.

## Summary Judgment

Langworthy asserts that the trial court erred in granting summary judgment dismissal of her claims against AHS. An appellate court reviews a superior court's summary judgment order de novo.[11] Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment

---

[10] Karp did not file a respondent brief in this appeal. For the first time in her reply brief, Langworthy asserts, without analysis, that questions of material fact precluded the summary judgment dismissal of Karp. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Observatory v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[11] Xiao Ping Chen v. City of Seattle, 153 Wn. App. 890, 898, 223 P.3d 1230 (2009).

as a matter of law.[12] "A material fact is one upon which the outcome of the litigation depends in whole or in part."[13] "The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if reasonable persons could reach but one conclusion."[14] Contrary to Langworthy's suggestion, the motions for summary judgment were supported by affidavits or declarations.

*Criminal Interference with a Service Animal*

Langworthy asserts, without analysis or citation to authority, that she is entitled to possession of Snorri pursuant to RCW 9.91.170, a criminal statute that prohibits any person from interfering with a dog guide or service animal. But this criminal statute contains no express provisions permitting a private cause of action based on its violation. Langworthy has no standing to assert a violation of the criminal statute.

*Guardian Release Form*

Next, Langworthy advances several theories in support of her claim that the guardian release form she signed did not confer ownership of Snorri to AHS. None are persuasive.

---

[12] Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005); CR 56(c).

[13] Atherton Condo. Apartment-Owners Ass'n Bd. Of Directors v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

[14] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003).

Langworthy first argues that the guardian release form did not constitute a valid contract because it lacked consideration. The essential elements of a contract are (1) the subject matter, (2) the parties, (3) the promise, (4) the terms and conditions, and (5) consideration.[15] "Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange."[16] In order to constitute consideration, an act or promise must be "bargained for and given in exchange for the promise."[17] Here, in exchange for relinquishing the dog, AHS agreed to provide food, shelter, and veterinary care while finding it an adoptive home. The guardian release form is a valid contract.

Langworthy next asserts that the guardian release form is an unconscionable contract of adhesion. We have established the following factors to determine whether a contract of adhesion exists: "(1) whether it is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties.'"[18] "[T]o the extent that the characterization of a contract as an adhesion contract has any relevance to determine the validity

---

[15] Bogle & Gates P.L.L.C. v. Holly Mountain Res., 108 Wn. App. 557, 561, 32 P.3d 1002 (2001) (quoting DePhillips v. Zolt Constr. Co., Inc., 136 Wn.2d 26, 31, 959 P.2d 1004 (1998)).

[16] King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994).

[17] Id.

[18] Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 393, 858 P.2d 245 (1993) (internal quotation marks omitted) (quoting Standard Oil Co. v. Perkins, 347 F. 2d 379, 383 n.5 (9th Cir. 1965)).

of a contract, it is only in looking for procedural unconscionability."[19] "[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable."[20]

Here, even if we assume that the guardian release form is a contract of adhesion, Langworthy has not shown that it is procedurally unconscionable. "Procedural unconscionability is 'the lack of a meaningful choice, considering all the circumstances surrounding the transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print.'"[21]

Langworthy further asserts that the guardian release form was unconscionable because AHS, knowing she was injured and desperate, took advantage of her condition and circumstances. But Langworthy chose to contact AHS seeking to relinquish her dog. After completing the online request form, she had a reasonable opportunity to decide whether or not to proceed. She then chose to bring Snorri to AHS and sign the contract. Nothing in the record suggests that AHS pressured her in any way. Langworthy further asserts that she only requested temporary help with Snorri and did not understand that AHS intended to take her dog permanently. She claims that the terms "fostering,"

---

[19] Id. (emphasis omitted).

[20] Adler v. Fred Lind Manor, 153 Wn.2d 331, 348, 103 P.3d 773 (2004).

[21] Id. at 345 (internal quotation marks omitted) (alterations in original) (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)).

"relinquish," "guardianship," "attachment" and "release" are ambiguous as to whether Snorri's stay with AHS would be temporary or permanent. But the one-page guardian release form plainly stated that Langworthy's signature "certifies my intent to terminate any legal attachment" to Snorri. Nothing was hidden in fine print. Moreover, on the day after Langworthy relinquished Snorri, she admitted that "I realize legally AHS now owns Snorri" and that she "made a big mistake" by giving her up.[22] The guardian release form clearly and unambiguously gave all rights of ownership in Snorri to AHS. The form was not procedurally unconscionable.

Langworthy also asserts that the contract is void because AHS subjected her to undue influence. "Undue influence involves unfair persuasion that seriously impairs the free and competent exercise of judgment."[23] No evidence in the record supports this claim.

*Mental Contractual Capacity*

Langworthy next asserts that she lacked the mental capacity to contract at the time she signed the guardian release form. The test of mental capacity to contract is whether "the contractor possessed sufficient mind or reason to enable him to comprehend the nature, terms, and effect of the contract in issue."[24] "'[I]t is insufficient to show merely that the party was of unsound mind or insane when it

---

[22] CP at 68.

[23] In re Estate of Jones, 170 Wn. App. 594, 606, 287 P.3d 610 (2012).

[24] Page v. Prudential Life Ins. of Am., 12 Wn.2d 101, 109, 120 P.2d 527 (1942).

was made, but it must also be shown that this unsoundness or insanity was of such a character that he had no reasonable perception or understanding of the nature and terms of the contract.'"[25]  The law presumes that a party has the capacity to contract, and this presumption can be rebutted only by clear, cogent, and convincing evidence.[26]

Langworthy contends that the record before the court on summary judgment proves that she was temporarily incapacitated at the time she signed the guardian release form.  As evidence, she points to (1) references in her pleadings to her anxiety and posttraumatic stress disorder (PTSD), (2) her GR 33 disability accommodation request to have court staff speak to her slowly and clearly, (3) a doctor's note written on a prescription pad stating that she relinquished control over Snorri because she was "not in a right state of mind" due to lack of sleep, and (4) spelling and date errors she made when filling in the guardian release form. None of this evidence rises to the level needed to overcome the presumption of capacity.

Langworthy argues that the medical testimony and evidence she attached to her amended motion for reconsideration further support her claim of mental contractual incapacity.  She contends that the court erred in failing to consider these materials.  But based on the record before us, it appears that the court never ruled on the motion.  On November 25, 2019, Langworthy noted the motion

---

[25] Id. (quoting 17 C.J.S., Contracts, § 133 at 479).

[26] Id.

hearing for December 13, 2019. This date was within 30 days after entry of the court's order, as required by CR 59(b). However, on December 5, 2019, after it became known that the trial court judge had been appointed to the Washington Supreme Court, Langworthy renoted the hearing to January 10, 2020. AHS argued that Langworthy's attempt to renote the motion hearing outside the time period allowed by CR 59(b), in an apparent attempt to have the motion considered by a different judge, should result in it being stricken. The record before us contains AHS's proposed order denying Langworthy's motion for reconsideration but no signed order. Accordingly, there is no appealable order regarding this matter in the record for this court to review. And because our review is limited to the record considered by the trial court, we will not consider these additional materials.[27]

*Disability Discrimination*

Langworthy asserts that AHS violated the ADA[28] and its state counterpart, the Washington Law Against Discrimination (WLAD),[29] by refusing to allow her to re-adopt Snorri because of her disability.

Title III of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of

---

[27] See RAP 9.12; State v. Bugai, 30 Wn. App. 156, 158, 632 P.2d 917 (1981).

[28] 42 U.S.C. § 12101, et seq.

[29] Ch. 49.60 RCW.

public accommodation."[30]  "Discrimination" is defined as, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."[31] Under WLAD, "[a] place of public accommodation discriminates when it fails to provide a person with a disability treatment comparable to that which it gives a person without that disability."[32]  "To make a prima facie case of public accommodation discrimination under the WLAD, a plaintiff must demonstrate: (1) that [s]he has a disability, (2) that the defendant's place of business is a public accommodation, (3) that the defendant discriminated against the plaintiff by providing treatment not comparable to the level of services provided to individuals without disabilities, and (4) that the disability was a substantial factor causing the discrimination."[33]

Even assuming that Langworthy is disabled and that AHS is a place of public accommodation under federal and state law, there is no material question of fact whether AHS failed to accommodate her disability by providing treatment not comparable to those without disabilities.  AHS gave Langworthy the opportunity to apply to relinquish a pet.  AHS agreed to take Snorri, and Langworthy accepted.

---

[30] 42 U.S.C. § 12182(a).

[31] 42 U.S.C. § 12182(b)(2)(A)(ii).

[32] Hartleben v. Univ. of Wash., 194 Wn. App. 877, 884, 378 P.3d 263 (2016).

[33] Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 187, 293 P.3d 413 (2013).

AHS also gave Langworthy the opportunity to explain why she should be able to get Snorri back. AHS considered and denied her request. There was no refusal of services and no disparate treatment.

Declaratory Judgment

Langworthy further contends that the trial court erred in granting declaratory judgment in favor of AHS. Where a party seeks reversal of a trial court's legal conclusions, our review of a declaratory judgment ruling is de novo.

The Uniform Declaratory Judgments Act (UDJA) provides that "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."[34] "[B]efore the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy."[35] A justifiable controversy is defined as "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."[36]

---

[34] RCW 7.24.020.

[35] Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

[36] Id.

Langworthy argues that this appeal demonstrates that the declaratory judgment was not final and conclusive because it did not terminate the controversy. But the court conclusively ruled that AHS owns the dog. Langworthy's legal right to appeal the trial court's rulings does not change this result.

Langworthy also asserts that the declaratory judgment effectively deprived her of her property without due process of law, in violation of the Fourteenth Amendment. This is so, she contends, because there was no fair trial to determine rights of ownership and possession. But Langworthy had a fair opportunity to present evidence to the court in opposition to AHS's motion for summary judgment and declaratory judgment. The trial court's decision to grant AHS's motions and to dismiss the case did not deprive her of due process.

Affirmed.

_____
Verellen, J.

WE CONCUR:

_____        _____
Brennan, J.                      Chun, J.